IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD L. DORSEY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:04CV670-W |
| | ) | |
| ALBANY INTERNATIONAL, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Ronald L. Dorsey, Sr., who now proceeds *pro se*,[1] brings this action against defendant Albany International, Appleton Wire Division ("Albany"), alleging that defendant discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 when it terminated his employment.  (Complaint, ¶¶ 1, 9).  This action is presently before the court on the motion for summary judgment filed by defendant on September 2, 2005 (Doc. # 24).  Although he was given an opportunity to do so, plaintiff has not responded to the motion for summary judgment.  (See Docs. ## 28-30).  Defendant argues that it is entitled to summary judgment because: (1) plaintiff cannot establish a *prima facie* case of discriminatory discharge; and (2) plaintiff cannot demonstrate that defendant's articulated reason for the termination is pretextual.  Upon consideration of the motion, the court concludes that it is due to be granted.

---

[1] Plaintiff was originally represented by counsel.  The case was referred to the undersigned Magistrate Judge in August, 2005, after plaintiff's counsel was permitted to withdraw from representation.  (Doc. ## 20, 21).

# BACKGROUND[2]

Defendant Albany manufactures "paper machine clothing," belts of custom-engineered fabric that are installed on paper-making machines to carry paper stock through each stage of the production process.  Plaintiff, a black male, was employed as a Lead Person in the finishing department of defendant's facility in Montgomery, Alabama.  In May 2003, he received a written warning for sleeping on the job and his employment was terminated.  (Bryant dec.; Exhibit 10 to Dorsey depo.).

Throughout his employment with Albany, plaintiff was a member of Teamsters Local No. 612.  (Dorsey depo., p. 79).  Teamsters Local No. 612 had negotiated a collective bargaining agreement between the union members and Albany.   (Id., pp. 81-82 and Exhibit 3;  Bryant dec.).  This agreement permits discharge of an employee who has received "three (3) written current warning notices for dissimilar offenses."  (Exhibit 3 to Dorsey depo., § 4.03).  A warning notice remains current for twelve months.  (Id., § 4.01).  In the twelve months preceding his May 2003 written warning notice and termination, plaintiff received two other written warnings – one for lack of attention to detail (missing an important step in processing fabric) on September 30, 2002 and one for making an incorrect measurement on March 27, 2003.  (Dorsey depo., pp. 91-92, 99-101 and Exhibits 8 and 9).

---

[2]  As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must view the

3

evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992); <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment."  <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Analytical Framework

In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence.  The analytical framework and burden of production varies depending on the method of proof chosen.  If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent.

\* \* \* \* \*

Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.

<u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998)(citations omitted).

"[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." One example of

4

direct evidence would be a management memorandum saying, "Fire Earley--he is too old." But the evidence at issue here, at most, suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence; by definition then, the evidence is circumstantial.

Earley v. Champion International Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990)(citations omitted).

In this case, the court has carefully considered whether there is any direct evidence of discriminatory intent. However, the one racial comment noted in the record had no connection with plaintiff's termination and, thus, does not constitute direct evidence of discrimination.[3] The McDonnell Douglas/Burdine[4] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The plaintiff must first make out a *prima facie* case of discrimination. Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir.1998); Combs, 106 F.3d at 1527-28. "Establishment of the

---

[3] Plaintiff testified that Donald Hall, plaintiff's helper, said that "it wasn't the first time he had worked with black folks," that he appreciated plaintiff helping him, and that "there's some good niggers and some bad niggers. And as far as [Hall] was concerned, [plaintiff] was a good nigger." Hall was never plaintiff's supervisor. (Dorsey depo., pp. 100-04; Bryant dec., ¶ 9). According to plaintiff's testimony, this statement was made "probably in 2001," (Dorsey depo., p. 104). It is apparent that it was not made in connection with plaintiff's termination, and there is no indication in the record that Hall either was or should be treated as the decisionmaker with regard to plaintiff's termination. Although Hall's report (upon questioning by Brock) that plaintiff was "outside sleeping" ultimately led to plaintiff's termination, it is apparent that defendant did not rely solely on Hall's report in deciding to issue plaintiff a written warning. (Brock dec.; Bryant dec.).

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

*prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*.

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. Walker, 158 F.3d at 1184. The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs, 106 F.3d at 1528.

### *Prima Facie* Case

A plaintiff may establish a *prima facie* case of discriminatory discharge by showing that he is a member of a protected class, that he was qualified for his position, that he was terminated and that he was replaced by someone outside his protected class. See Hawkins

6

v. Ceco Corporation, 883 F.2d 977, 982 (11th Cir. 1989)(citing Marks v. Prattco, 607 F.2d

1153 (5th Cir. 1979)).   In the present case, plaintiff was replaced as lead person by Earnest

Bass, a black male.  (Hampsey dec., ¶ 8).   In lieu of showing that he was replaced by a

person outside his protected class, a plaintiff alleging discriminatory termination may instead

establish a *prima facie* case of discriminatory termination by showing that "his employer

treated similarly situated employees outside his classification more favorably . . . ." Holifield

v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

      Plaintiff disputes the factual basis for the last two written warning notices issued to

him.  As to the warning for the incorrect measurement, he testified that he believes that

Donald Hall intentionally failed to hold the tape measure at "zero" while plaintiff checked

the measurement.  Plaintiff also denies that he was sleeping.  However, plaintiff has directed

the court to no evidence of record – and the court has found none – indicating that the

supervisors issuing these warning notices did not believe that plaintiff had engaged in the

cited misconduct.[5]  "A plaintiff does not shift the burden to the defendant under McDonnell

Douglas merely by stating that he was fired or treated unfavorably." Morris v. Emory Clinic,

Inc., 402 F.3d 1076, 1082 (11th Cir. 2005).   Rather, he must "establish a *prima facie* case

which includes identifying an individual who replaced him or was treated better than he was

---

      [5] In Jones v. Bessemer Carraway Medical Center, 137 F.3d 1306 (11th Cir.), *superseded in part on other grounds on denial of rehearing*, 151 F.3d 1321 (11th Cir. 1998), the court noted that the plaintiff may establish a *prima facie* case of discrimination by showing: "(1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged – either (a) disputedly or (b) admittedly – in misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority employees (that is, persons outside the protected class) received more favorable treatment." 137 F.3d at 1311 n. 6.

who was not a member of his protected class . . . ."  Id.

In his charge of discrimination, plaintiff identifies four white comparators.  He asserts that Donald Hall, Todd Oiler, and Jack Hudson were all caught sleeping on the job but were not terminated.  He further notes that Dean King received three written warnings but was not terminated.  (Exhibit 10 to Dorsey depo.).  Defendant has filed evidence that Hall, Oiler and Hudson were caught sleeping on the job and that they were all issued written warnings and suspended without pay.  (Bryant dec., ¶ 8 and Exhibits 2-4).  Ted Bryant, defendant's human resources manager, states in his declaration that Hall, Hudson and Oiler were not terminated because they did not have three active written warnings.  (Id.).  Plaintiff has not directed the court to any evidence to the contrary, and the court has found no such evidence.  Plaintiff testified in his deposition that he does not know how many other current warnings Hall, Oiler and Hudson had when they were caught sleeping on the job.  (Dorsey depo., p. 159;  see also Exhibit 15 to Dorsey depo., pp. 191-92).

Albany has a separate attendance policy that is included in the plant rules, and written warnings under the attendance policy are not counted toward the three warnings under Article 4.03 of the collective bargaining agreement.  (Bryant dec., ¶ 7).  The attendance policy sets forth a detailed explanation of what constitutes an "occurrence" under the policy, how many occurrences within a certain period of time will lead to a written warning, and how many written warnings will lead to termination.  (See Dorsey depo., pp. 82-83 and Exhibit 4, Plant Rules).  Bryant states that, although King had active written warnings under the attendance policy, he never had three active written warnings for dissimilar offenses

8

under Article 4.03 and, thus, King's employment was not terminated under Article 4.03.
(Bryant dec., ¶ 8).[6]

"To make a comparison of the plaintiff's treatment to that of non-minority employees,
the plaintiff must show that he and the employees are similarly situated in all relevant
respects. . . . In determining whether employees are similarly situated for purposes of
establishing a *prima facie* case, it is necessary to consider whether the employees are
involved in or accused of the same or similar conduct and are disciplined in different
ways. . . . *If a plaintiff fails to show the existence of a similarly situated employee, summary
judgment is appropriate where no other evidence of discrimination is present.*"   Holifield,
*supra*, 115 F.3d at 1562 (citations omitted)(emphasis in original).[7] Plaintiff has not identified

---

[6] Plaintiff also states, under oath, that King had two written warnings for attendance and one
for poor quality. (Dorsey telephone affidavit, Exhibit 20 to Dorsey depo.). Plaintiff testified in his
deposition that King told him that he had "left glue in fabric several times," in the "2000's and the
'90s" but that King told him that no one said anything to him. (Dorsey depo., pp. 93-96). Plaintiff's
deposition testimony regarding what King told him is hearsay, and the court has not considered it.
Plaintiff further testified to a specific incident in 2001 when King missed a step in a process and
stated that he knows that King did not receive a write-up because "[i]f he was getting wrote up for
everything that I was coming behind him – and the guys on the shift would help correct me – it
would have been three within two weeks time." (Id., pp. 98-99). Plaintiff's testimony (even if it
were sufficient to demonstrate that plaintiff has actual knowledge of King's disciplinary history) is
insufficient to establish that King committed violations that should have resulted in three active
warnings for dissimilar offenses under Article 4.03 or that Bryant or Hampsey knew of such
violations.

[7]   See also  Anderson v. Twitchell-A-Tyco, 76 F. Supp. 2d  1279, 1286 (M.D. Ala.
1999)("'To be deemed 'similarly-situated,' the individual with whom the plaintiff seeks to compare
his/her treatment must have dealt with the same supervisor, have been subject to the same standards
and have engaged in the same conduct without such differentiating or mitigating circumstances that
would distinguish their conduct or the employer's treatment of them for it. In determining whether
employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to
consider whether the employees are involved in or accused of the same or similar conduct and are
(continued...)

any employee outside his protected class who was not terminated upon receiving a third written warning notice for dissimilar offenses under Article 4.03 of the collective bargaining agreement and, thus, he has not produced evidence of a similarly situated comparator for purposes of establishing his *prima facie* case.   Therefore, plaintiff has not established a *prima facie* case of discriminatory termination.  See Morris, *supra*, 402 F.3d at 1076 ("Only after the plaintiff has made his *prima facie* case does the burden shift to the defendant. Morris never makes it past the first step of *McDonnell Douglas*.  He has not identified any female physician who replaced him. . . . Morris also fails to identify a female physician who received similar complaints concerning off-color remarks about her patients' ability to have children and who was accused of conducting forceful physical examinations who was not terminated (or received favorable treatment)."   Since plaintiff has failed to establish a *prima facie* case of discriminatory termination, defendants are entitled to summary judgment on his claim of discrimination.

        Additionally, defendant has carried its burden of articulating legitimate nondiscriminatory reasons for its employment action (see Hampsey dec.; Bryant dec.) and the evidence of record is insufficient to demonstrate the existence of a genuine issue of material fact regarding pretext.  Plaintiff has presented no evidence to rebut Bryant's assertion that the four potential comparators did not meet the requirements for discharge

---

[7](...continued)
[treated or] disciplined in different ways.'")(quoting Malladi v. Brown, 987 F. Supp. 893, 909-10 (M.D. Ala. 1997)).

under Article 4.03 of the collective bargaining agreement and has presented no other evidence of pretext.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion for summary judgment (Doc. # 24) be GRANTED, that defendant's motion to strike plaintiff's claim for punitive damages (Doc. # 27) – treated by the court as a motion for summary judgment (see Doc. # 28) – be DENIED as MOOT, and that this action be DISMISSED with prejudice.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before February 18, 2006.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 15th day of February, 2006.

11

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE